UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

RANDY BROWN
Plaintiff

v.	Civil Action: 1:22-cv-03696 (ABJ)

DISTRICT OF COLUMBIA
Defendant

### Plaintiff's Reply to Defendant's Opposition to Plaintiff's Request to Amend with Assistance from Counsel

I. Introduction

1. Plaintiff is a disabled resident of the District of Columbia whose disability qualifies Plaintiff for services through the *Office of the Rehabilitation Services Administration* of the District of Columbia.

2. Plaintiff's disability affects neuropsychological functioning, adversely impacting short-term memory, resulting in a disorganized and repetitive communication style associated with ADHD, a form of executive dysfunction.

3. The effects of Plaintiff's communication disorder are evidenced in Plaintiff's rambling attempt to draft a Complaint under Title II against the District of Columbia government and District of Columbia Superior Court related to a refusal to accommodate in violation of 42 U.S.C. 12131-12165.

4. In response to Plaintiff's Motion to Amend dated 5/8/23, Defendant's Opposition dated 5/25/23 advanced the following argument:

    > Whatever the extent and nature of Plaintiff's cognitive disability, the appointment of counsel. . . will not "present a claim that is a proper subject for relief because Plaintiff is still asking this court to overturn a case specific order of the Superior Court of the District of Columbia

5. The position advanced in Defendant's *Opposition* to Plaintiff's request to amend Plaintiff's Complaint avoids answering question of the "nature and extent of Plaintiff's disability.

6. To challenge Defendant's argument requires a reemphasis upon the disorganizing effects of Plaintiff's brain injury that adversely affects Plaintiff's ability to think and communicate in an organized way, caused, in part, by short-term memory deficits.

7. The *Americans with Disabilities Act* (ADA) does not apply to the federal courts. However, the Judicial Conference of the Administrative Office of the United States Courts has adopted a policy that all federal courts will "provide reasonable accommodations to persons with communications disabilities."

8. The Guide to Judiciary Policy, Vol. 5, Ch. 2., § 255, *Services to the Hearing Impaired and Others with Communication Disabilities* provides the following policy statement:

> (c) Under Judicial Conference policy, a court must provide sign language interpreters or other auxiliary aides and services to participants in federal court proceedings who are deaf, hearing- impaired or have communication disabilities and may provide these services to spectators when deemed appropriate.

9. Judicial Conference policy contrasts with Defendant's effort to discount the importance of the "extent and nature of Plaintiff's cognitive disability that adversely affects communication with the Court.

10. Plaintiff's request to amend Plaintiff's complaint with assistance from counsel would enable Plaintiff to state claims under both Title II of the ADA and the Rehabilitation Act.

11. Paragraphs 9 and 10 are poorly worded requests for *injunctive relief* to prevent irreparable harm to rectify the adverse effects of Defendant's failure to accommodate.

12. The benefit of an injunction outweighs its burden on the defendant, and is in the public interest in view of Defendant's efforts to circumvent congressional intent as prescribed under Title II of the ADA for conduct involving the refusal by a public entity to

accommodate a person with a disability (**See**, *42 U.S.C. § 12131-12165*); **See,** also, p. 7, Plaintiff's pleading dated 5/8/23.

13. Plaintiff requests to amend assisted by counsel. Plaintiff's communication disability makes it difficult for Plaintiff to prioritize facts in drafting a complaint.

14. The complicity of the case makes it difficult prioritize facts in stating a claim:

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

RANDY BROWN
Plaintiff

v.                              Civil Action: 1:22-cv-03696 (ABJ)

DISTRICT OF COLUMBIA
Defendant

**Proposed Amended Title II Complaint Under The**
**Americans with Disabilities Act**

I. Introduction

1. Plaintiff suffers from a *communication disorder* as defined under *title ii Subpart E., of the Americans with Disabilities Act, 1990* ("title ii" or "ADA") caused by a diffuse axonal injury (DAI).

2. The District of Columbia government and its agent, the Superior Court of the District of Columbia, are covered entities as defined under title ii, by receiving federal funding.

3. *Discrimination* under title ii involves the refusal by a public entity to accommodate a disabled person (See, *42 U.S.C. § 12131-12165*).

4. The Superior Court routinely muted Plaintiff during hearings as a result of Plaintiff's disability that causes perseveration. On 6/9/22 muting Plaintiff resulted in an unequal opportunity to be heard during a hearing scheduled originally scheduled to present evidence to enable Plaintiff, in support of CounterClaims to challenge Defendant's argument for foreclosure.

5. On 6/9/22, the Court muted Plaintiff, preventing Plaintiff from presenting evidence by means of an auxiliary aid.

6. On 6/9/22, the Court also interfered with the ability of Plaintiff's lawyer to speak, by warning Plaintiff's attorney to speak only in response to questions that the Court posed.

7. The restraints placed upon Plaintiff's lawyer resulted in an unequal opportunity for Plaintiff to be heard.

8. After the hearing dated 6/9/22, Plaintiff wrote to DC Superior Court administrators describing the efforts by Plaintiff to notify the DC Superior Court of Plaintiff's ongoing attempts to request a reasonable accommodation for Plaintiff's communication disability.

9. Plaintiff described how Plaintiff was denied an opportunity to describe important details of an accounting fraud, when the Court muted Plaintiff during the hearing on 6/9/22. The Court also ordered Plaintiff's lawyer not to address any matters without permission from the court.

10. When court administrators refused to address Plaintiff's accommodation request to have an opportunity to present testimony about accounting irregularities, Plaintiff filed a Complaint with the Department of Justice.

11. After Plaintiff filed a DOJ complaint, the DC Superior Court refused to docket pleadings.

*Discrimination is also defined under Title II, §§12131—12134, as a public entity's retaliating against or interfering with "qualified" persons with disabilities in the provision or operation of public services, programs, or activities regardless of whether the discrimination is caused by the denial of a reasonable accommodation or resulting from other misconduct.*

12. *Title II* permits *injunctive relief* in the context of the denial of equal access to the District of Columbia Superior Court related to a failure to accommodate Plaintiff's communication disability.

13. The benefit of an injunction outweighs its burden on the defendant, and is in the public interest in view of the foregoing factual allegations describing Defendant's efforts to circumvent congressional intent as prescribed under Title II of the ADA for conduct involving the refusal by a public entity to accommodate a person with a disability (See, *42 U.S.C. § 12131-12165*).

### Argument

14. Title II, §§12131—12134, prohibits any public entity from discriminating against "qualified" persons with disabilities in the provision or operation of public services, programs, or activities whether the discrimination is caused by retaliation or interference related to the denial of reasonable accommodations resulting from other misconduct.

15. The Act defines "public entity" to include state and local governments, as well as their agencies and instrumentalities. §12131(1), thereby referencing state courts.

16. The following excerpt was emailed to Mr. Clifton Grandy, the ADA Coordinator for the Superior Court on 11/8/21 and on 8/26/22 requesting reasonable accommodations, notifying the District of Columbia Superior Court of a neuronal injury requiring a reasonable accommodation:

Good morning Mr. Grandy,

Re: Case #: 2019 CA 003717

17. Please assist me to obtain a reasonable accommodation related to the visual and cognitive effects (sic) brain injury.

18. In 2009 I suffered a "diffuse complex concussion" that caused widespread disruption of the neuronal circuitry ("diffuse axonal injury" or "DAI") as diagnosed by physicians at both Johns Hopkins and George Washington University. A DAI typically causes slower brain processing hence slower thinking or difficulty accomplishing tasks or a reduction in the number of tasks that can be performed at a given time.

19. In addition to slower brain processing, the DAI that I suffered adversely affects vision and reading. Reading requires such a high level of brain activity that my brain stops processing, sometimes causing an inability to comprehend the meaning of words or the inability to see what is on the page. Sections of the page disappear, blur, or become incomprehensible.

20. The Department of Veterans Affairs published an informative document concerning the effect of DAI upon vision: Visual Problems in Traumatic Brain Injury: A Systematic Review of Sequelae And Interventions For the Veteran Population (May 2009). (**See**, the letter dated 11/8/21 addressed to ADA coordinator Grandy, Exhibit A)

21. Mr. Grandy transmitted Plaintiff's letter to judge Laura Cordero, judge Kelly Hagashi, and judge Irving.

22. The clerks for judge Cordero and judge Hagashi responded via email confirming that the court would provide electronic communication acknowledging the existence of

Plaintiff's communication disorder.

23. Judge Irving's scheduling an oral hearing accommodates Plaintiff, by affording

24. Plaintiff the opportunity to discuss the difficulty of discovering a loan servicer's fraudulent accounting activity, complicated by the loan servicer's fraudulent representations about an oral contract as a reasonable accommodation for Plaintiff's symptoms of incapacity from 2009 - 2013.

25. The oral hearing was scheduled in accordance with the ADA guidelines by offering a structured hearing format to allow Plaintiff to use auxiliary aid assisted by counsel to describe with particularity the time, the amount of transfer, who transferred the funds, who received the transfer.

26. In fact, the auxiliary aid contains two graphs, one depicting overpayments, deceptively obtained based on fraudulent misrepresentations related to an oral contract under title iii of the ADA as a buffer of protection for Plaintiff's mortgage, as result of Plaintiff's disability, totaling approximately $16.000.00 that were fraudulently transferred from Plaintiff's account.

27. There is also a graph depicting regular payments totaling approximately $32,000.00, identifying the date, time, amount, and the entity responsible of the fraudulent transfers of Plaintiff's regular payments.

28. After reviewing an early draft of Plaintiff's auxiliary aid, opposing counsel requested that the

oral hearing not take place, without permitting discussion from Plaintiff, the court granted the request.

29. In contrast to the way in which the court indulgenced opposing counsel, by canceling the oral hearing and permitting opposing counsel to speak freely throughout the hearing, the court restricted my lawyer to answering random questions that avoided a discussion about the fraudulent transfer of nearly $60,000.00, occurring from 2009 - 2014, the period of Plaintiff's mental incapacity from a neuronal injury.

30. As was stated initially, title II of the ADA defines discrimination as a failure to provide reasonable accommodations to persons with disabilities to ensure equal access to the services and activities of the District of Columbia Superior Court.

### The Denial of Reasonable Accommodations on 6/9/22, Failure to Provide Equal Access

31. The decision to mute Plaintiff and to restrict Plaintiff's lawyer only to questions posed by the court illustrates unequal treatment, resulting in a negation of rights under title ii of the ADA.

32. Comments from the bench suggest an indifference concerning questions of disability and equal access.

33. Specifically, judge Tunnage arrived at the hearing on 6/9/22, announcing that he had neglected to read the file.

34. Judge Tunnage also omitted to entertain questions required in order to defend Plaintiff's Counterclaims, underscoring unequal access as prohibited under Title II:

> I am newly assigned to this case and have neither read the file

nor have I made myself acquainted with the facts of the case.

35. With the entry of judge Tunnage into the case, not only were title ii accommodations not provided, but Tunnage made a point of muting Plaintiff at all subsequent hearings, while also losing Plaintiff's pleadings.

36. Plaintiff's pleading dated 10/27/22 entitled Limitations a fraudulent argument . . . was filed in person by a professional currier service three times. The court never responded to Plaintiff's any of Plaintiff's arguments.

37. By neglecting to read the file and by denying Plaintiff the benefits of the oral hearing format as an accommodation, the Court denied Plaintiff an opportunity to use an auxiliary aid with assistance by counsel to discuss otherwise Plaintiff's efforts to discover accounting fraud, justifying the tolling of the statute of limitations to permit the survival of Plaintiff's CounterClaims.

### Common Law Fraud under D.C. Law

38. The essential elements of common law fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.

39. Plaintiff suffered significant injuries as a result of the fraudulent misrepresentations and active concealment of fraud as result of Plaintiff's reliance upon the fraudulent misrepresentations.

   a. *injuries resulting from fraud*

40. The accounting malfeasance involving the misapplication and misappropriation of payments has caused harm Plaintiff's mortgage account, requiring tens of thousands of dollars of forensic accounting auditing and investigation to rectify.

nor have I made myself acquainted with the facts of the case.

35. With the entry of judge Tunnage into the case, not only were title ii accommodations not provided, but Tunnage made a point of muting Plaintiff at all subsequent hearings, while also losing Plaintiff's pleadings.

36. Plaintiff's pleading dated 10/27/22 entitled Limitations a fraudulent argument . . . was filed in person by a professional currier service three times. The court never responded to Plaintiff's any of Plaintiff's arguments.

37. By neglecting to read the file and by denying Plaintiff the benefits of the oral hearing format as an accommodation, the Court denied Plaintiff an opportunity to use an auxiliary aid with assistance by counsel to discuss otherwise Plaintiff's efforts to discover accounting fraud, justifying the tolling of the statute of limitations to permit the survival of Plaintiff's CounterClaims.

### Common Law Fraud under D.C. Law

38. The essential elements of common law fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.

39. Plaintiff suffered significant injuries as a result of the fraudulent misrepresentations and active concealment of fraud as result of Plaintiff's reliance upon the fraudulent misrepresentations.

   a. *injuries resulting from fraud*

40. The accounting malfeasance involving the misapplication and misappropriation of payments has caused harm Plaintiff's mortgage account, requiring tens of thousands of dollars of forensic accounting auditing and investigation to rectify.

nor have I made myself acquainted with the facts of the case.

35. With the entry of judge Tunnage into the case, not only were title ii accommodations not provided, but Tunnage made a point of muting Plaintiff at all subsequent hearings, while also losing Plaintiff's pleadings.

36. Plaintiff's pleading dated 10/27/22 entitled Limitations a fraudulent argument . . . was filed in person by a professional currier service three times. The court never responded to Plaintiff's any of Plaintiff's arguments.

37. By neglecting to read the file and by denying Plaintiff the benefits of the oral hearing format as an accommodation, the Court denied Plaintiff an opportunity to use an auxiliary aid with assistance by counsel to discuss otherwise Plaintiff's efforts to discover accounting fraud, justifying the tolling of the statute of limitations to permit the survival of Plaintiff's CounterClaims.

### Common Law Fraud under D.C. Law

38. The essential elements of common law fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.

39. Plaintiff suffered significant injuries as a result of the fraudulent misrepresentations and active concealment of fraud as result of Plaintiff's reliance upon the fraudulent misrepresentations.

   a. *injuries resulting from fraud*

40. The accounting malfeasance involving the misapplication and misappropriation of payments has caused harm Plaintiff's mortgage account, requiring tens of thousands of dollars of forensic accounting auditing and investigation to rectify.

41. During the period of the so-called oral contract, Chase stopped applying payments.

42. The Transaction History dated 2009 - 2013 documents how payments are received then reversed from the account, more than 40 times.

43. Based on a bookkeeping review of the Lender's Transaction History dated 2009 - 2013 that Ms. Harrell performed in 2019, the following payments do not conform with any established accounting protocols and therefore are not documented as being applied to Plaintiff's mortgage account:

| # | Entry | Date | Amount | Status |
|---|---|---|---|---|
| 1. | Entry # 236 | 4/25/09 | $1087.00 | misapplied / no details |
| 2. | Entry # 237 | 4/25/09. | $1087.00 | misapplied / no details |
| 3. | Entry #244 | 6/11/09 | $1089.00 | misapplied/ no details |
| 4. | Entry # 249 | 7/22/09 | $1089.00 | misapplied/ no details |
| 5. | Entry #251 | 7/31/09 | $1089.00 | misapplied/ no details |
| 6. | Entry # 253 | 9/2/09 | $1087.99 | misapplied/ no details |
| 7. | Entry #262 | 10/5/09. | $1087.00 | misapplied / no details |
| 8. | Entry #263 | 11/09/09 | $1087.00 | misapplied/ no details |
| 9. | Entry #272 | 1/23/10 | $1090.00 | misapplied/ no details |
| 10. | Entry #275 | 2/9/10 | $1087.00 | misapplied/ no details |
| 11. | Entry #281 | 3/22/10 | $1200.00 | misapplied/ no details |

| | | | | |
|---|---|---|---|---|
| 12. Entry #291 | 4/27/10 | $1090.00 | misapplied/ | no details |
| 13. Entry #301 | w/o date | $1087.00 | misapplied/ | no details |
| 14. Entry #306 | 7/10/10 | $1090.00 | misapplied / | no details |
| 15. Entry #311 | 7/21/10 | $1089.00 | misapplied/ | no details |
| 16. Entry #317 | 8/28/10 | $1820.00 | misapplied/ | no details |
| 17. Entry #327 | 9/28/10 | $1062.00 | misapplied/ | no details |
| 18. Entry #352 | 10/26/10 | $2100.00 | misapplied | no details |
| 19. Entry #353 | 10/27/10 | $1087.00 | misapplied | no details |
| 20. Entry #370 | 1/31/10 | $1087.00 | misapplied | no details |
| 21. Entry #374 | 2/24/11 | $1087.00 | misapplied | no details |
| 22. Entry #380 | 3/31/11 | $2,280.00 | misapplied | no details |
| 23. Entry #381 | 3/31/11 | $1087.00 | misapplied | no details |
| 24. Entry #387 | 4/13/11 | $2178.00 | misapplied/ | no details |
| 25. Entry #388 | 4/14/11 | $1079.00 | misapplied | no details |
| 26. Entry #389 | 4/21/11 | $1224.00 | misapplied | no details |

Total = $32, 490.00

44. The above list from the loan servicing transaction history provides a partial list of misapplied payments. The harm caused by improperly handling of payments requires forensic accounting to address the *omissions of fact* reflected in the above list.

### Omissions of Pertinent Data in Financial Statements Violates Generally Accepted Accounting Principles

45. The American Institute of Certified Public Accounting (AICPA) defined the omission of data from a financial statement as deceptive, if the omitted facts or data causes the financial document not to present all material facts in conformity with generally accepted accounting principles (GAAP).

46. The loan servicer's receiving money through an alleged ADA compliant oral contract in real estate, though illegal purports to be a confidential relationship under circumstances of the lender's managing payments in connection with real estate for a cognitively disabled client.

47. Corroborating the abuses of the confidential relationship by the lender, the alleged ADA complaint oral contract required supplemental payments as a "disability of protection" for Plaintiff's account.

48. From 2009 - 2011, the following overpayments were received that the loan servicer applied, reversed, then transferred from Plaintiff's utilizing cryptic notations that omit to provide pertinent data about the status of the payments:

49. Based on a bookkeeping review of the Transaction History performed by Ms. Harrell in 2019, the following overpayments do not conform with any established accounting protocols and are not documented as received but not properly applied to Plaintiff's mortgage account:

**Misapplied Overpayments**

1. Receipt date -   4/24/11    $1224.00

2. Receipt date -   8/29/11,    $832.45

3. Receipt date -   1/5/12,     $1098.82

4. Receipt date-    1/13/12,    $1098.82

5. Receipt date -   3/6/12,     $1112.62

6. Receipt date-    3/6/12,     $917.00

7. Receipt date-    4/19/12,    $944.00

8. Receipt date -   6/15/12,    $1112.62

9. Receipt date-    6/15/12,    $1112.62

10. Receipt date-   8/30/12,    $917.89

11. Receipt date-   10/16/12,   $1112.62

| | | | |
|---|---|---|---|
| 12. | Receipt date - | 12/12/12, | $2225.00 |
| 13. | Receipt date- | 3/8/13, | $1002.88 |
| 14. | Receipt date- | 4/16/13, | $1143.92 |
| 15. | Receipt date- | 3/18/13, | $995.92 |
| 16. | Receipt date- | 3/10/13, | $1147.92 |

total = $18,007.31  (no details / data; all payments transferred)

Conclusion

The denial of Plaintiff's reasonable accommodation request, results in omissions of fact or the suppression of facts pertaining to the aforementioned accounting malfeasance, thereby denying Plaintiff of equal access and an equal opportunity to heard in an activity of the DC Superior Court.

Date: 6/15/23

Randy Brown, Plaintiff, pro se

Email: zeugma7@verizon.net

Phone: (202)701-9974